UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DARREN WOLD,

              Petitioner,

                                   Case No. 15-cv-1040-pp

    v.

DYLON RADTKE,

              Respondent.

---

**ORDER DISMISSING PETITION FOR WRIT OF *HABEAS CORPUS* (DKT. NO. 1), DISMISSING CASE WITH PREJUDICE AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

---

On July 18, 2017, the petitioner, who is incarcerated in Green Bay Correctional Institution and is representing himself, filed a proposed amended petition for writ of *habeas corpus* under 28 U.S.C. §2254 challenging his 2009 conviction in Waukesha County Circuit Court for first-degree intentional homicide. Dkt. No. 19-1. On April 6, 2020, the court vacated its February 22, 2016 judgment, lifted the stay, ordered the clerk's office to separately docket the proposed amended petition, screened the proposed amended petition, allowed the petitioner to proceed and ordered the respondent to answer or otherwise respond. Dkt. No. 21. The clerk docketed the amended petition the same day. Dkt. No. 22. This order dismisses the petition and the case and declines to issue a certificate of appealability.

1

# I.    Background

## A.    Underlying State Case

### 1.    *Trial in Waukesha County Circuit Court*

In its order affirming the petitioner's conviction and a denial of postconviction relief, the Wisconsin Court of Appeals described the factual background underlying the petitioner's conviction:

> [The petitioner's] former girlfriend, Kimberly Smith, was found stabbed to death in 2009. The State alleged that [the petitioner] hatched a plot to kill Smith to whom he feared losing custody of their four-year-old son. The plan was that [the petitioner's] longtime friend, Jack Johnson, and a third man, Justin Welch, would travel to Wisconsin from Mexico where the pair lived. Welch, who would do the killing, had no connection to Wisconsin or to Smith. All three were charged with PTAC [party to a crime] first-degree intentional homicide.

Dkt. No. 28-2 at ¶2.

The circuit court joined the petitioner's and Johnson's ensuing trials. Id. at ¶2. Before Welch ultimately "pled guilty and testified for the State at [the petitioner's] and Johnson's joint trial," the petitioner filed a motion to sever. Id. at ¶¶2, 3, n.2. The circuit court denied the motion, finding no "sufficiently specific showing of antagonistic defenses, and that joinder presented no confrontation issues." Id. at ¶3.

"Welch testified about statements Johnson allegedly made to him implicating [the petitioner] in a conspiracy to kill Smith and about an exchange with Smith in which Welch acknowledged that he was at her house because of [the petitioner]." Id. at ¶5. Welch testified that "he and Johnson discussed travel logistics, ways to accomplish the murder, a failed prior arrangement [the

2

petitioner] and Johnson had made with other hit men who took the money and ran, requests to [the petitioner] to wire more money for Welch's travel expenses, and not being paid the full $7,000 [the petitioner] had agreed to pay for the job." Id. at ¶8. "Welch also said he heard Johnson tell [the petitioner] he needed money 'for his truck' or to 'open a bar' because [the petitioner] said they should 'talk in code' when discussing money." Id. "Welch testified that when he entered Smith's house the morning of the crime '[s]he asked me what did I want.'" Id. at n.4. The following exchange with the prosecutor occurred:

> Q: Did you answer?
>
> A: Yes.
>
> Q: What did you tell her?
>
> A: I told her, "You know why I am here."
>
> Q: Did she have a response to that?
>
> A: Yes.
>
> Q: What did she say?
>
> A: She said, "[the petitioner]?"
>
> Q: Did you respond to her?
>
> A: Yes.
>
> Q: What did you tell her?
>
> A: I said, "Yes."

Id.

3

The jury heard testimony from a guardian *ad litem* and a social worker
who were involved in the petitioner and Smith's family court custody dispute.
Id. at ¶14.

> [T]he [guardian *ad litem*] and the social worker testified about the
> tenor and substance of their interactions and communications with
> [the petitioner]. One or both testified that [the petitioner] made
> accusations, none of which could be substantiated, of Smith's drug
> and heavy alcohol use and partying, described heated e-mails,
> including one stating that Smith's infidelity at the end of their
> relationship filled [the petitioner] "with hate and anger" so that he
> "couldn't help but feel [he] wanted to get even," and described
> further anger over his mounting legal fees and having to pay child
> support. The social worker, whose custody report was due October
> 1, 2009, testified that when she learned that [the petitioner] lied
> about where he lived and had moved 1200 miles away to Lubbock,
> Texas, she determined to recommend sole custody to Smith with
> only supervised visitation for [the petitioner]. She also testified that
> [the petitioner] knew that her custody report was due on October 1,
> 2009—the same day Welch killed Smith.

Id. at ¶16.

A Waukesha County jury found both the petitioner and Johnson guilty.
Id. at ¶2. On December 20, 2011, the circuit court sentenced the petitioner to
life in prison without the possibility of extended supervision. Dkt. No. 28-1 at
2. The clerk entered judgment the same day. State v. Wold, Waukesha County
Case No. 2009CF001349 (available at https://wcca.wicourts.gov). On June 17,
2012, the clerk entered an amended judgment. Dkt. No. 28-1 at 2.

### 2. *Postconviction Motion and Direct Appeal*

On January 17, 2013, the petitioner filed a motion for postconviction
relief. Wold, Waukesha County Case No. 2009CF001349. The docket indicates

that on June 6, 2013, the court orally denied the motion at an evidentiary hearing.[1] Id.

On July 19, 2013, the petitioner filed a notice of appeal. Id. On appeal, the petitioner argued that (1) the circuit court's denial of his motion to sever "was an erroneous exercise of discretion that resulted in an unfair trial," dkt. no. 28-6 at 15-21; (2) Welch's testimony violated the petitioner's rights to confrontation under the United States and Wisconsin constitutions, id. at 21-30; (3) testimony from the former guardian *ad litem* and a social worker who were involved in the family court custody case regarding the petitioner's son unfairly prejudiced the petitioner, id. at 30-35; and (4) the petitioner's attorneys were ineffective for failing to renew their objections to a joint trial and for failing to properly object to testimony that was cumulative and improper character evidence, id. at 35-37.

On December 23, 2014, the court of appeals affirmed the circuit court's judgment and denial of postconviction relief. Dkt. No. 28-2. The court of appeals determined that the circuit court "properly exercised its discretion in denying [the petitioner's] motion to sever." Id. at ¶13. Noting the petitioner's argument that "except for Welch's testimony, there [was] no independent evidence of conspiracy," the court observed that it "may consider an out-of-court declaration by a party's alleged coconspirator to determine if a conspiracy existed." Id. (citing Wis. Stat. §901.04(1)). Concluding that the trial court did

---

[1] On July 29, 2013. the court filed a written order reflecting its denial of postconviction relief. Id. See also Dkt. No. 28-9.

5

not err in admitting the testimony of the guardian *ad litem* and the social worker, the court of appeals determined that "the evidence was not other acts evidence" and "gave context to the case." Id. at ¶14. The court explained that state law "does not prohibit testimony about other acts introduced to provide the background or context of a case." Id. at ¶15 (citing State v. Hereford, 195 Wis. 2d 1054, 1069 (Wis. Ct. App. 1995)). It concluded that their testimony was "part of the panorama of evidence needed to completely describe the crime that occurred and is thereby inextricably intertwined with the crime." Id. at ¶16 (quoting State v. Dukes, 303 Wis. 2d 208, 228 (Wis. Ct. App. 2007)). The court rejected the petitioner's argument that the allegedly unfair prejudice created by the testimony of the guardian *ad litem* and the social worker substantially outweighed its probative value. Id. at ¶17 (citation omitted). According to the court of appeals, "[i]f the balance between probative value is close, the evidence is admissible because the danger of unfair prejudice must substantially outweigh its probative value," and "[t]he trial court implicitly did that balancing." Id. at ¶18 (quotation omitted). The court saw "no error in admitting the testimony." Id.

Last, the court of appeals rejected the petitioner's argument that his attorneys were ineffective for failing to renew objections to the testimony of the guardian *ad litem* and the social worker when the trial court had rejected the same objections when presented in pretrial motions. Id. at ¶19. The court reasoned that "[b]oth attorneys testified to the effect that they saw little benefit restating objections on which the court had already ruled." Id. at ¶21. It noted

6

that restating such an objection might only "highlight damaging evidence or result in being chastised in front of the jury." Id. Seeing no deficient performance, the court declined to consider prejudice. Id.

On January 22, 2015, the petitioner filed a petition for review in the Wisconsin Supreme Court. Dkt. No. 28-9. He argued that (1) the court of appeals "incorrectly determined that the trial court properly exercised its discretion in denying [the petitioner's] motion to sever the trial," id. at 11, (2) "[t]he lengthy family court testimony was not properly admitted and was unfairly prejudicial to [the petitioner]," id. at 16, and (3) both courts below "erred in ruling that [the petitioner's] attorneys did not perform deficiently and prejudicially for failing to renew their objections to a joint trial, and for failing to properly object to the family court evidence," id. at 21. On April 16, 2015, the court denied review. Dkt. No. 28-3.

B.    Federal *Habeas* Petition (Dkt. No. 1)

On August 26, 2015, the petitioner filed a federal *habeas* petition. Dkt. No. 1. The petition asserted eight grounds for relief: (1) the circuit court violated the petitioner's Confrontation Clause rights when it denied his motion to sever, (2) the absence of certain evidence "misle[d] the jury," (3) ineffective assistance of trial counsel for failing to properly impeach Welch, (4) ineffective assistance of trial counsel for failing to call a witness who would have contradicted the State's evidence of the petitioner's participation in the crime, (5) ineffective assistance of counsel for failing to consult with the petitioner about trial strategy and failing to call a witness who would have shown

7

Johnson's motive to kill Smith, (6) judicial bias, (7) the trial court erroneously denied his motion to change venue, (8) cumulative error violated the petitioner's Due Process and fair trial rights. Id. at 13-20.

On November 24, 2015, the court screened the petition under Rule 4 of the Rules Governing Section 2254 Cases. Dkt. No. 7. The court concluded that the petitioner had exhausted only two of his claims: that the trial court erroneously denied his motion to sever and that insufficient evidence supported his conviction.[2] Id. at 6. The court "g[a]ve the petitioner the opportunity to decide whether he want[ed] to abandon his unexhausted claims and proceed only on the claims he ha[d] exhausted, or whether he wishe[d] to return to state court to exhaust all the claims he raised in his August 2015 *habeas* petition." Id. at 8. It ordered that on or before January 29, 2016, the petitioner must file a document indicating how he would like to proceed. Id. at 9.

On January 6, 2016, the court received from the petitioner a motion to dismiss the petition without prejudice so that he could return to state court to exhaust his claims. Dkt. No. 8. Seven weeks later, the court dismissed the petition without prejudice. Dkt. No. 9.

---

[2] In its screening order, the court construed the petitioner's second ground as a claim that insufficient evidence supported his conviction. Dkt. No. 7 at 3. It concluded that the petitioner had exhausted "his claim that his conviction is not supported by sufficient evidence because the state failed to show that Justin Welch received payment for his role in the murder-for-hire scheme." Id. at 6. Having reviewed the petitioner's brief to the court of appeals on direct review, the court sees no insufficiency of the evidence claim. Dkt. No. 28-6. The petitioner argued that the evidence did not show a conspiracy. Id. at 21-26. But the petitioner raised this argument in the context of his argument that the court should not have considered Welch's testimony as statements of a co-conspirator. Id.

C.    Return to State Court and Collateral Review

On January 27, 2016, the petitioner filed a motion for postconviction relief under Wis. Stat. §974.06 in the circuit court. Wold, Waukesha County Case No. 2009CF001349. On April 11, 2016, the petitioner filed a second §974.06 motion. Id. On April 19, 2016, the circuit court denied both motions without a hearing. Dkt. No. 28-4 at 2; Wold, Waukesha County Case No. 2009CF001349. A month later, the petitioner filed a notice of appeal Wold, Waukesha County Case No. 2009CF001349.

On appeal, the petitioner asserted eight claims:

I.    Was Post Conviction Relief and Appellant counsel ineffective?

II.    Was trial counsel ineffective because he failed to show, at trial, that Justin Welch had given multiple inconsistent statements to the police related to the murder-for-hire scheme?

III.    Was [the petitioner's] trial counsel ineffective because he failed to call a fact witness where testimony allegedly would have undermined the State's evidence that the [petitioner] was complicit in the scheme?

IV.    Was [the petitioner's] trial counsel ineffective because he failed to consult with the [petitioner] about strategic choices, and failed to call the victim's best friend as a witness to prove that Jack Johnson had a motive to kill the victim?

V.    The evidence was insufficient to support [the petitioner's] conviction because the state did not prove that codefendant, Justin Welch, was paid in connection with the conspiracy to commit murder?

VI.    Was the trial judge biased against the [petitioner] because the judge's wife knew the victim, and should have excused himself?

VII.    Should the trial court have granted the [petitioner's] motion to change venue, and [the petitioner's] counsel's attempt to pursue that issue was ineffective?

9

VIII.  Did the combined effect of all of the trial errors violated [sic] [the petitioner's] due process rights and deprived [sic] him of a fair trial?

Dkt. No. 28-10 at 5.

On March 15, 2017, the court of appeals affirmed the circuit court's denial of postconviction relief. Dkt. No. 28-4 at 1. Reasoning that the petitioner's arguments were "conclusory and undeveloped," and that the petitioner "[did] not provide a sufficient reason for failing to raise them on direct appeal," the court determined that the petitioner's claims were procedurally barred. Id. at 3. The court explained that although the petitioner "suggest[ed] that his postconviction counsel was ineffective for not pursuing them," the court would "not assume ineffective assistance from a conclusory assertion." Id. (citing State v. Romero-Georgana, 360 Wis. 2d 522, 553 (Wis. 2014)).

On April 14, 2017, the petitioner filed a petition for review in the Wisconsin Supreme Court. Dkt. No. 28-5. The petition for review asserted the same claims the petitioner raised on collateral appeal. Dkt. No. 28-12 at 5. On July 11, 2017, the court denied review. Dkt. No. 28-5.

D.    Amended Federal Habeas Petition

On July 18, 2017, the petitioner filed a status report in this court. Dkt. No. 19. He stated that "[t]he attached files are arguments that have been exhausted in Wisconsin Court System." Id. The petitioner attached a proposed amended petition to the report. Dkt. No. 19-1. The proposed amended petition asserted the same claims the petitioner raised to both the Wisconsin Court of

10

Appeals and the Wisconsin Supreme Court on collateral appeal. Dkt. No. 19-1 at 10. The proposed amended petition contained one additional claim: that the circuit court violated his Confrontation Clause rights when it erroneously denied his motion for severance. Id. On April 6, 2020, the court screened the proposed amended petition, allowed the petitioner to proceed and ordered the respondent to answer or otherwise respond. Dkt. No. 21. The same day, the clerk separately docketed the amended petition. Dkt. No. 22.

**II.    Analysis**

     A.    <u>Standard</u>

Under the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, a federal court may grant *habeas* relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" <u>Miller v. Smith</u>, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. §§2254(d)(1), (2)). A federal *habeas* court reviews the decision of the last state court to rule on the merits of the petitioner's claim. <u>Charlton v. Davis</u>, 439 F.3d 369, 374 (7th Cir. 2006).

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000)). "The 'unreasonable application' clause requires the state

11

court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 71 (2003). In other words, §2254(d)(1) allows a court to grant *habeas* relief only where it determines that the state court applied federal law in an "objectively unreasonable" way. Renico, 559 U.S. at 773. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 102 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standard under §2254(d) is 'difficult to meet' and 'highly deferential.'" Saxon v. Lashbrook, 873 F.3d 982, 987 (7th Cir. 2017) (quoting Cullen v. Pinholster, 563 U.S. 170, 181 (2011)).

B.    Motion for Severance and the Confrontation Clause

1.    *Governing Law*

"The Confrontation Clause of the Sixth Amendment provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" Davis v. Washington, 547 U.S. 813, 821 (2006). The Confrontation Clause bars the admission of a witness' testimonial statement when that witness does not appear at trial "unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Id. (citing Crawford v. Washington, 541 U.S. 36, 53-54 (2004)). Only testimonial statements, however, "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." Id. (citing Crawford, 541 U.S.

12

at 51). Nontestimonial statements, "while subject to traditional limitations upon hearsay evidence," do not implicate the Confrontation Clause. Id.

  2. *The Parties' Arguments*

  The petitioner argues that the circuit court's denial of his severance motion resulted in a violation of his Confrontation Clause rights. Dkt. No. 22 at 17-18. He asserts that the denial of his motion to sever precluded him from calling Johnson as a witness. Id. Stating that he had no opportunity to cross-examine Johnson, the petitioner concludes that Welch's testimony violated the petitioner's Due Process rights. Id. at 18. The petitioner says that because he could not question Johnson, "the jury never had a way to evaluate the truth of Justin Welch's statements, or if there were any such ever made by Jack Johnson." Id. According to the petitioner, the jury was "equally handicapped in trying to assess whether or not Justin Welch reported Jack Johnson's statements accurately." Id. Citing Crawford, 541 U.S. 36, the petitioner notes that a "prosecutor cannot present out-of-court 'testimonial statements' intended to be presented at trial—unless the defense has had an opportunity to cross-examine the author's statements." Id.

  The respondent argues that court of appeals reasonably rejected the petitioner's claim regarding the motion to sever. Dkt. No. 33 at 14. In terms of the Confrontation Clause, the respondent asserts that Johnson's statements were offered as the statements of a co-conspirator, which meant that under Wis. Stat. §908.01(4)(b)(5) they were not hearsay. Id. at 11. He contends that Welch's testimony did not implicate the petitioner's Confrontation Clause rights

because Johnson's statements were not testimonial. Id. at 12. Noting that Welch was a co-conspirator, available at trial, testified at trial and was subject to cross-examination, the respondent concludes that "there was plainly no confrontation violation with respect to anything Welch said about what he, Johnson and [the petitioner] did." Id. at 12-13.

While the respondent concedes that Johnson did not testify and was unavailable for cross-examination, the respondent argues that his statements were nonetheless admissible though Welch's testimony because they were not testimonial. Id. at 13. The respondent asserts that "Johnson's statements to Welch or in his presence were obviously not made in anticipation of litigation." Id. According to the respondent, "Johnson assumed that no one other than Welch and [the petitioner] would ever find out what he said while planning and executing the murder plot; and arranging for/haggling over payment." Id. The respondent states that if Welch accurately recounted Johnson's statements in his trial testimony, the statements "implicated both [the petitioner] but also Johnson himself in the murder plot." Id. For that reason the respondent contends that "Johnson certainly did not expect Welch to reveal what he said to Welch or in his presence to anyone in law enforcement." Id. The respondent adds that any non-testimonial statements are admissible under the law prior to Crawford "because co-conspirator statements are deemed inherently trustworthy and admissible under a firmly-rooted exception to the hearsay rule." Id. (citing Bourjaily v. United States, 483 U.S. 171, 183-84 (1987)).

Turning to the circuit court's decision not to sever, the respondent stresses that a trial court's decision to try a criminal defendant and a codefendant jointly is "addressed to the trial court's sound discretion and is normally not reviewable" on federal *habeas* review, and argues that the relevant statements would have been admissible at separate trials. Id. at 14-17. According to the respondent, "[j]oint trials are especially appropriate when, as here, the defendants are charged as parties to the crime, *United States v. Sweeney*, 688 F.2d 1131, 1140 (7th Cir. 1982), or as co-conspirators." Id. at 16. The respondent reiterates that the petitioner confronted and cross-examined Welch. Id. at 17. He argues that "Welch would have testified the same way had [the petitioner's] trial been severed from Johnson's." Id. The respondent concludes that had the circuit court severed the petitioner's trial, "[n]othing would have changed." Id. He explains that Johnson still would have invoked his Fifth Amendment right to remain silent and Johnson's statements to Welch or in Welch's presence would have remained admissible through Welch's testimony. Id.

### 3. *The Court of Appeals' Decision*

The Wisconsin Court of Appeals considered the petitioner's argument that the circuit court's denial of his motion for severance deprived him of a fair trial. Dkt. No. 28-2 at ¶¶3-13. The court stated that "[a] motion for severance is committed to the trial court's discretion." Id. at ¶4 (citing State v. Locke, 177 Wis. 2d 590, 597 (Ct. App. 1993)). It recounted the circuit court's conclusions that initial joinder was proper under state law, "that there was no sufficiently

Case 2:15-cv-01040-PP   Filed 11/18/22   Page 15 of 27   Document 34

specific showing of antagonistic defenses, and that joinder presented no confrontation issues." Id. at ¶3. The court of appeals found Welch's testimony regarding his discussions with Johnson admissible. Id. at ¶¶8-9. It observed that beyond the petitioner having the opportunity for cross-examination, "the truth of the statements was not the issue." Id. at ¶9. The court concluded that "[the statements] were offered to show that they came during the course and in furtherance of the conspiracy, apprised coconspirators of developments, revealed efforts to conceal the crime, and explained why and how Welch might travel from Mexico to Wisconsin to kill someone he never met." Id. As to Welch's exchange with Smith, the court found that it "likewise was not hearsay." Id. at ¶10. It reasoned that Wis. Stat. §908.01(4)(b)5 "requires only that the declarant (Welch) and the party against whom the statement was offered ([the petitioner]), not the person to whom the statement was made (Smith), be members of the conspiracy." Id. (citing United States v. James, 712 F.3d 79, 106 (2d Cir. 2013)). The court determined that "Welch's statements about what Johnson and Smith said were not testimonial." Id. at ¶11.

The court rejected the petitioner's argument that "the reliability of the admitted statements was undermined by 'unusual circumstances'—Johnson's decision not to testify and Welch's motivation to lie since he had not yet been sentenced." Id. at ¶12. Finding neither circumstance unusual, the court explained that even if the statements were not excluded from the definition of hearsay, "they still would be admissible as out-of-court declarations of a coconspirator, evidence that 'falls within a firmly rooted hearsay exception.'" Id.

(quoting <u>Bourjaily</u>, 483 U.S. at 183) (some quotations omitted). Citing the petitioner's argument that "except for Welch's testimony, there [was] no independent evidence of conspiracy," the court observed that it "may consider an out-of-court declaration by a party's alleged coconspirator to determine if a conspiracy existed." <u>Id.</u> at ¶13 (citing Wis. Stat. §901.04(1)). For those reasons, the court concluded that "[t]he trial court properly exercised its discretion in denying [the petitioner's] motion to sever." <u>Id.</u>

    4. *Discussion*

  The court of appeals' conclusions fell within the bounds of reasonableness as §2254(d) requires. A statement in furtherance of a conspiracy, by its nature, is not testimonial. <u>Michigan v. Bryant</u>, 562 U.S. 344, 362 n.9 (2011) (quoting <u>Crawford</u>, 541 U.S. at 56). As the court of appeals stated, "Welch testified about statements Johnson allegedly made to him implicating [the petitioner] in a conspiracy to kill Smith and about an exchange with Smith in which Welch acknowledged that he was at her house because of [the petitioner]." Dkt. No. 28-2 at ¶5. Welch testified that "he and Johnson discussed travel logistics, ways to accomplish the murder, a failed prior arrangement [the petitioner] had made with other hit men who took the money and ran, requests to [the petitioner] to wire more money for Welch's travel expenses, and not being paid the full $7,000 [the petitioner] had agreed to pay for the job." <u>Id.</u> at ¶8. "Welch also said he heard Johnson tell [the petitioner] he needed money 'for his truck' or to 'open a bar' because [the petitioner] said they should 'talk in code' when discussing money." <u>Id.</u> The court reasonably

17

concluded that these statements were made in furtherance of the conspiracy to kill Smith. So, it was reasonable for the court to conclude that the statements were not testimonial in nature and did not implicate the Confrontation Clause.

The court also concluded that the statements were not hearsay because the court reasonably found that Johnson, Welch and the petitioner were co-conspirators. Under Wis. Stat. §908.01(4)(b)5, a statement is not hearsay if "[t]he statement is offered against a party and is . . . [a] statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Under Federal Rule of Evidence 801(d)(2)(E), a statement is not hearsay if "[t]he statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy."

And the circuit court's decision to deny the motion to sever was not an abuse of discretion. "Severance decisions are reviewed under an abuse of discretion standard." Stomner v. Kolb, 903 F.2d 1123, 1126 (7th Cir. 1990). *Habeas* relief is not warranted "unless the petitioner shows both that the trial judge abused his or her discretion in refusing to sever the trial and further, that the refusal resulted in a trial that was fundamentally unfair." Id. "Joint trials may be found fundamentally unfair if codefendants present true 'mutually antagonistic defenses' or if the 'actual conduct' of the defense of one defendant prejudices that of another." Id. (quoting United States v. Ziperstein, 601 F.2d 281, 285-86 (7th Cir. 1979)). "A misjoinder of defendants rises to the level of a federal constitutional violation only if it results in substantial

18

prejudice to a defendant." Johnson v. Bett, 349 F.3d 1030, 1037 (7th Cir. 2003) (citing United States v. Lane, 474 U.S. 438 (1986)).

The petitioner has not presented, and the court is not aware of, any reason why Welch would not have offered the same testimony at the petitioner's severed trial that he offered at the joined trial. He has presented no evidence of mutually antagonistic defenses. And he has not presented any evidence demonstrating that the failure to sever resulted in a trial that was fundamentally unfair. The trial court's decision to deny the petitioner's motion to sever the joint trial did not substantially prejudice the petitioner.

C.      Procedural Default

1.      *Adequate and Independent State Law Grounds*

The respondent asserts that the petitioner procedurally defaulted his remaining claims because the court of appeals rejected them under independent and adequate state procedural rules. Dkt. No. 33 at 22. He asserts that the petitioner did not present any of his remaining claims to the Wisconsin courts on direct review. Id. The respondent says that "[t]o the extent that [the petitioner] presented some or all of them for the first time on collateral review in state court, he procedurally defaulted them." Id. He argues that the court of appeals on collateral review "properly applied the long-standing rule adopted in Wis. Stat. § 974.06(4), as interpreted in [State v.] *Escalona-Naranjo*, [185 Wis. 2d. 168 . . . (Wis. 1994)] when it held that [the petitioner's] failure to present his new claims on direct review, and his failure to provide a sufficient reason to excuse his failure to do so, worked as a procedural default that precluded

19

consideration of their merits." Id. at 23. He contends that the state court also "properly rejected" the petitioner's arguments under "Wisconsin's adequate and independent procedural rule allowing a reviewing court to summarily reject claims without reaching the merits if they are conclusory or undeveloped." Id. at 23-24.

Under AEDPA, a state prisoner must exhaust available state-court remedies before a district court will consider the merits of a constitutional claim in a federal *habeas* petition. 28 U.S.C. §2254(b)(1)(A). The exhaustion requirement gives the state an opportunity to pass upon and correct alleged violations of the federal rights of persons who are incarcerated by the state. Bolton v. Akpore, 730 F.3d 685, 694 (7th Cir. 2013). To exhaust his claims, "[a] petitioner must raise his constitutional claims in state court 'to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue.'" Weddington v. Zatecky, 721 F.3d 456, 465 (7th Cir. 2013) (quoting Villanueva v. Anglin, 719 F.3d 769, 775 (7th Cir. 2013)). To comply with this requirement, the incarcerated person must "fairly present" the claim in each appropriate state court. Bolton, 730 F.3d at 694-95. "The failure to present fairly each habeas claim in state court 'leads to a default of the claim[s] and bar[s] the federal court from reviewing the claim[s'] merits.'" Weddington, 721 F.3d at 456 (quoting Smith v. McKee, 598 F.3d 374, 382 (7th Cir. 2010)). The courts call this circumstance "procedural default."

One of the ways a criminal defendant can "procedurally default" on a claim—thus losing his right to federal *habeas* review on that claim—is if the

last state court that issued judgment "'clearly and expressly' states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989) (quoting Caldwell v. Mississippi, 472 U.S. 320, 327 (1985)). "Merits review of a habeas claim is foreclosed if the relevant state court's disposition of the claim rests on a state law ground that is adequate and independent of the merits of the federal claim." Triplett v. McDermott, 996 F.3d 825, 829 (7th Cir. 2021). "Federal habeas courts must ascertain for themselves if the petitioner is in custody pursuant to a state court judgment that rests on independent and adequate state grounds." Coleman v. Thompson, 501 U.S. 722, 729 (1991). When considering whether a state court decision rests on a state procedural default, federal courts look to "the last explained state court judgment." Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991).

A state ground is independent "when the court actually relied on the procedural bar as an independent basis for its disposition of the case." Thompkins v. Pfister, 698 F.3d 976, 986 (7th Cir. 2012). "The test to avoid procedural default in federal court is whether the state court's decision rests on the substantive claims primarily, that is, whether there is no procedural ruling that is independent of the court's decision on the merits of the claims." Holmes v. Hardy, 608 F.3d 963, 967 (7th Cir. 2010). "If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available." Ylst, 501 U.S. at 801. However, "a state court that separately reaches the merits of a substantive claim may also produce an independent procedural ruling that

bars federal habeas review." Holmes, 608 F.3d at 967. The question is whether the state court's procedural ruling is primary. If it is, then the procedural ruling is independent. Id. As for adequacy, a state law ground is "adequate" "when it is a firmly established and regularly followed state practice at the time it is applied." Thompkins, 698 F.3d at 986. When considering the adequacy of a state law ground, the court does not consider "whether the review by the state court was proper on the merits." Lee v. Foster, 750 F.3d 687, 694 (7th Cir. 2014).

The Seventh Circuit has found that the Escalona-Naranjo doctrine can constitute an adequate and independent state law ground. Howlett v. Richardson, 729 F. App'x 461, 465 (7th Cir. 2018) (citing Perry v. McCaughtry, 308 F.3d 682, 690 (7th Cir. 2002)). The doctrine states that "an appellant who fails to assert a claim that could have been asserted on direct appeal or a Wis. Stat. § 974.02 motion is barred from subsequently asserting that claim for the first time in a postconviction motion under Wis. Stat. § 974.06." State v. Pope, 389 Wis. 2d 390, 419 (Wis. 2019) (citing Escalona-Naranjo, 185 Wis. 2d at 173). Similarly, the Seventh Circuit has found that Wisconsin's pleading requirement set forth in State v. Romero-Georgana, 360 Wis. 2d 522 (Wis. 2014) can form and adequate and independent state law ground. Garcia v. Cromwell, 28 F.4th 764 (7th Cir. 2022). Under the Romero-Georgana rule, a postconviction litigant can assert ineffective assistance of postconviction counsel as cause to overcome the Escalona-Naranjo procedural bar only when the litigant "allege[s] specific facts that, if true, would establish his

22

postconviction counsel's ineffectiveness." Id. at *1 (citing Romero-Georgana, 360 Wis. 2d at 522). Generally, if a state court imposes a procedural bar, the petitioner may not challenge the correctness of the bar in a *habeas* petition. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")

Aside from the Confrontation Clause claim that the court has discussed, the amended petition contains the same eight claims that the petitioner raised to the court of appeals on collateral review:

I.     Was Post Conviction Relief and Appellant counsel ineffective?

II.     Was trial counsel ineffective because he failed to show, at trial, that Justin Welch had given multiple inconsistent statements to the police related to the murder-for-hire scheme?

III.     Was petitioner's trial counsel ineffective because he failed to call a fact witness where testimony allegedly would have undermined the State's evidence that the [petitioner] was complicit in the scheme?

IV.     Was petitioner's trial counsel ineffective because he failed to consult with the [petitioner] about strategic choices, and failed to call the victim's best friend as a witness to prove that Jack Johnson had a motive to kill the victim?

V.     The evidence was insufficient to support petitioner's conviction because the state did not prove that codefendant, Justin Welch, was paid in connection with the conspiracy to commit murder?

VI.     Was the trial judge biased against the petitioner because the judge's wife knew the victim, and should have excused himself?

23

VII.    Should the trial court have granted the [petitioner's] motion to change venue, and the petitioner's counsel's attempt to pursue that issue was ineffective?

VIII.   Did the combined effect of all of the trial errors violated [sic] the petitioner's due process rights and deprived [sic] him of a fair trial?

Dkt. No. 22 at 9.

When it affirmed the circuit court's denial of postconviction relief on collateral review, the court of appeals concluded that these claims were procedurally barred under Escalona-Naranjo and Romero-Georgana. Dkt. No. 28-4 at 2-3. It reasoned that the petitioner's arguments were "conclusory and undeveloped" and that the petitioner "[did] not provide a sufficient reason for failing to raise them on direct appeal." Id. The court explained that although the petitioner "suggest[ed] that his postconviction counsel was ineffective for not pursuing them," the court would "not assume ineffective assistance from a conclusory assertion." Id. at 3 (citing Romero-Georgana, 360 Wis. 2d at 553).

The Wisconsin Court of Appeals did not commit clear error when it applied these procedural bars. The court discussed none of the merits of the petitioner's claims. Id. at 2-3. There is no indication that the appellate court imposed the procedural bars as a subterfuge to evade consideration of federal issues. Unless the petitioner can show both cause and prejudice, this court cannot review the petitioner's procedurally defaulted claims.

2.    *Cause and Prejudice*

If a federal court determines that a petitioner's claims are procedurally defaulted, it must consider whether to excuse that default. Coleman, 501 U.S.

24

at 750. A court may excuse default if the petitioner can show either (1) cause for the default and resulting prejudice, or (2) that the failure to consider the federal claim will result in a fundamental miscarriage of justice. Id. (citations omitted). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). "It has long been the rule that attorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel." Davila v. Davis, 137 S. Ct. 2058, 2065 (2017). "Prejudice means an error which so infected the entire trial that the resulting conviction violates due process." Weddington, 721 F.3d at 465 (quoting McKee, 598 F.3d at 382)). To show that a miscarriage of justice will occur if the court were to deny *habeas* relief, a petitioner must show that he is actually innocent of the offenses of which he was convicted. Hicks v. Hepp, 871 F.3d 513, 531 (7th Cir. 2017). A petitioner asserting actual innocence as a gateway to a defaulted claim "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 536-37 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

The petitioner has not alleged cause for his procedural defaults. The closest the petitioner comes is a statement that "Post-Conviction Relief and/or Appellant counsel failed to raise several issues," and "this failure should be

viewed as deficient performance." Dkt. No. 22 at 10. On collateral review the court of appeals reviewed this exact statement; it explained that although the petitioner "suggest[ed] that his postconviction counsel was ineffective for not pursuing" his postconviction claims before they became procedurally barred, the court would "not assume ineffective assistance from a conclusory assertion." Dkt. No. 28-4 at 3 (citing Romero-Georgana, 360 Wis. 2d at 553). The petitioner provides no basis for this court to conclude otherwise. Any error by the petitioner's attorney on direct review cannot explain the court of appeals' decision to apply Romero Georgana on collateral review. The petitioner "has not identified any external impediment that prevented him from satisfying the *Romero-Georgana* pleading threshold necessary to obtain relief from the *Escalona-Naranjo* bar." Garcia v. Cromwell, 28 F.4th 764 (7th Cir. 2022). "[E]rrors by counsel in the first round of postconviction proceedings cannot serve as cause to excuse [the petitioner's] *own* default in the second." Id. The court will dismiss the petition.

### III. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve

encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability, because reasonable jurists could not debate the petitioner's procedural default or the court's decision to deny the petition on the merits.

## IV.    Conclusion

The court **DISMISSES** the petition for writ of *habeas corpus.* Dkt. No. 1.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

The court **DECLINES** to issue a certificate of appealability.

Dated in Milwaukee, Wisconsin this 18th day of November, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

27